# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND and ARTHUR H. BUNTE, JR., Trustee, <br><br> Plaintiffs <br><br> v. <br><br> F.C.J. PROPERTIES, INC. and TOTAL WASTE MANAGEMENT, LLC, <br><br> Defendants. | No. 17-cv-5320 <br><br> Judge John J. Tharp, Jr. |

## MEMORANDUM OPINION AND ORDER

Plaintiff Central States, Southeast and Southwest Areas Pension Fund and its trustee, Arthur H. Bunte, Jr. (collectively the "Fund") allege that F.C.J. Properties, Inc. ("FCJ") transferred real property to Total Waste Management, LLC in order to evade payment of a debt it owed to the Fund in violation of the Employment Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1001, *et seq.* and the Michigan Uniform Fraudulent Transfer Act ("UFTA"), MCL § 566.331-566.45. The Fund now moves for summary judgment against Total Waste Management, arguing that it is entitled to the value of the transferred asset in addition to various other fees. For the following reasons, the motion is denied in part and granted in part.

## BACKGROUND

### I. Local Rules

As required by the Northern District of Illinois' Local Rule 56.1, the Fund submitted with its motion a statement setting forth the material facts it contends are undisputed. *See* Plaintiff's Statement of Material Facts ("SMF"), ECF No. 48. Doing so shifted the burden of production to

Total Waste Management, which was then required to, among other things, 1) file a response to each numbered paragraph in the Fund's statement and, in the case of disagreement, include a specific reference to the record and 2) file a statement of additional facts requiring the denial of summary judgment, "including references to the affidavits, parts of the record, and other supporting materials relied upon." LR 56.1(b)(3)(C). Instead, Total Waste Management filed only a three-page response brief setting forth its own version of events without making a single reference to the record or other supporting materials. ECF No. 50. Because it failed to comply with the Local Rules, all the facts set forth by the Fund are deemed admitted. *See* LR 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party); *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006) (opposing party's failure to respond in kind resulted in deeming admitted the uncontroverted statements in movant's Local Rule 56.1 submission). The Court will also disregard any additional facts included in Total Waste Management's brief. *See Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3d 626, 629 (7th Cir. 2010) (affirming district court's refusal to consider facts alleged in summary judgment response brief where party had failed to comply with local rules). That is not to say, however, that the Court's analysis is strictly limited to the facts set forth by the Fund, as it may also consider the "other materials in the record." Fed. R. Civ. P. 56(3). Moreover, Total Waste Management's failure to identify disputed facts does not automatically result in judgment in favor of the Fund, as the Fund must still show that it is entitled to judgment as a matter of law. With that understanding, the Court turns to the details of the case.

II. **Statutory Framework and Undisputed Facts**

Given that ERISA is "famously complicated and often tedious," *Chicago Truck Drivers v. El Paso Co.*, 525 F.3d 591, 595 (7th Cir. 2008), the Court begins with an overview of the relevant

law. ERISA, amended by the MPPAA, requires employers who withdraw from multiemployer pension plans to pay their share of "unfunded vested benefits," otherwise known as "withdrawal liability." 29 U.S.C. § 1381(b)(1). When an employer withdraws, the pension plan must calculate the amount of liability, notify the employer of that liability, and demand payment. 29 U.S.C. § 1399(b)(1). If an employer disputes the liability calculation, it must initiate arbitration within 90 days of receiving notice from the pension plan. Failure to make a timely demand for arbitration results in the assessment becoming due according to the schedule set by the plan. 29 U.S.C § 1401(b)(1). If unable to collect, a pension plan may sue the withdrawing employer for the liability. Importantly, though, it may also sue any trade or business under "common control" with that employer. As relevant here, "a controlling interest is defined as having ownership of stock representing at least 80% of voting power of all classes of stock or 80% of the total value of all shares." *Cent. States, Se. & Sw. Areas Pension Fund v. CLP Venture LLC*, 760 F.3d 745, 748 (7th Cir. 2014). Members of an employer's "control group" are jointly and severally liable for the withdrawal liability incurred by the employer. *Id.* at 747.

The plaintiff in this case is a multiemployer pension fund. Plaintiff's Statement of Facts ("SOF") ¶ 5, ECF No. 48. In 2010, Capital Environmental Services, Inc. ("CES"), a contributing employer not party to this suit, requested the Fund to provide estimates of the liability it would incur under ERISA if it withdrew from the plan. *Id.* at ¶ 15. CES received the requested estimates via letters dated May 17, 2010 and October 14, 2010. Both letters informed CES that for purposes of withdrawal liability, ERISA defined "employer" to include all trade or businesses, whether or not incorporated, under common control with CES. *Id; see* ERISA, 29 U.S.C. § 1301(b)(1).

The Fund later determined that CES had effectuated a complete withdrawal from the Pension Fund in June 2010. SOF at ¶ 16. On July 28, 2011, the Fund demanded payment of the

3

withdrawal liability, the principal amount of which was $162,867.08. CES did not initiate timely arbitration or pay the assessment, so the Fund filed a lawsuit to collect on November 4, 2011. It obtained an entry of default against CES on March 29, 2012 in the amount of $203,346.13. *Id.* at ¶¶ 17-20. No portion has been paid. *Id.* at ¶ 22.

While attempting to collect from CES, the Fund discovered that CES and defendant FCJ, which leased commercial property to CES, were under common control—the sole shareholder for both entities was John G. Runco. *Id.* at ¶ 6. Further investigation revealed that on August 28, 2011 (a month after the CES received the Fund's demand for payment), FCJ transferred title of real property (its sole asset) to defendant Total Waste Management, LLC for $1.00. *Id.* at ¶ 23. Total Waste Management had been formed by John G. Runco's son, John L. Runco, only a week before the transfer occurred. John L. Runco is Total Waste Management's CEO and sole owner. *Id.* ¶ 11.

Based on the above discoveries, the Fund filed suit against FCJ and Total Waste Management in July 2017, seeking to recover the CES withdrawal liability and alleging that the transfer of real property was carried out to evade or avoid payment. In November 2017, this Court entered a default judgment against FCJ in the amount of $274,209.38. Because the Fund has been unable to recover from FCJ, it now moves for summary judgment against Total Waste Management. The Fund argues that it may recover from Total Waste Management the value of the transferred asset, among other things, because the transfer violated ERISA and the Michigan Uniform Fraudulent Transfer Act.

## DISCUSSION

### I. ERISA

ERISA provides that if "a principal purpose of a transaction is to evade or avoid liability," liability shall be determined and collected "without regard to such transaction." 29 U.S.C. § 1392(c). In other words, when assets are transferred to avoid liability, a fund can recover the

4

amount of those assets from the transferee. *See Cent. States, Se. & Sw. Areas Pension Fund v. Johnson*, 991 F.2d 387, 392 n.6 (7th Cir. 1993). As the Fund points out, evading liability need not be the ***only*** purpose of the transaction; evasion is ***a*** principal purpose so long as it is "one of the factors that weighed heavily in the seller's thinking." *Santa Fe Pac. Corp. v. Cent. States, Se. & Sw. Areas Pension Fund*, 22 F.3d 725, 727 (7th Cir. 1994).

The Seventh Circuit has explained that whether the purpose of a transaction is to "evade or avoid liability" is a mixed question of law and fact. That is, the issue is "whether the facts satisfy the statutory standard." *Chicago Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Louis Zahn Drug Co.*, 890 F.2d 1405, 1409 (7th Cir. 1989). Summary judgment is appropriate, then, only if "a reasonable trier of fact could reach only one conclusion." *Harris v. Allen County Bd. of Commissioners*, 890 F.3d 680, 684 (7th Cir. 2018) (quoting *Ty, Inc. v. Publ'ns Int'l Ltd.*, 292 F.3d 512, 516 (7th Cir. 2002)).

Such is not the case here. True, it is undisputed that CES was aware of the Fund's demand for payment. It is also undisputed that a month after the Fund made its demand, FCJ (a member of the CES control group) transferred its sole asset (valued for tax assessment purposes at $83,576.00) to Total Waste Management, a company formed a week before by the son of FCJ's sole shareholder, for only $1.00. These facts strongly suggest that a purpose of the transfer was to evade liability. That conclusion, however, requires a fact finder to infer from John G. Runco's status as sole shareholder of both CES and FCJ that FCJ had actual knowledge of 1) the Fund's demand for

payment to CES and 2) its own potential liability. Otherwise, the transfer could not logically have been an effort to avoid liability.[1]

Given that the Fund has not presented direct, undisputed evidence of FCJ's actual awareness of the Fund's withdrawal liability claim against CES, the Court concludes that it would not be unreasonable for a jury to conclude that FCJ lacked such awareness. Although not acknowledged by the Fund, John G. Runco testified in his deposition that he was under power of attorney at the relevant time[2] and had nothing to do with CES. Plaintiff's Ex. B 23:12-14, ECF No. 48. In fact, he stated that he was "surprised" to find out that he was a shareholder and was unaware that CES had any creditors. *Id.* at 16:7-8, 16:19. However improbable, the fact that John G.'s testimony is "self-serving" does not mean it is insufficient to defeat the Fund's summary judgment motion. *See Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013) ("As we have repeatedly emphasized over the past decade, the term 'self-serving' must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment."). While the Court views this testimony with some skepticism given that it is uncorroborated by any other evidence in the record, that is of no moment at this juncture. Witness

---

[1] It is worth noting that "notice to one member of a controlled group is notice to all." *Cent. States, Se. & Sw. Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1375 (7th Cir. 1992). That FCJ had **constructive** notice of its liability (*i.e.*, that it should have known of the potential claim against it), however, has no bearing on its ***actual*** reasons for transferring the property.

[2] The Court understands this to refer to divorce proceedings during which his wife obtained authority over the affairs of CES. After that, according to John G. Runco, he had nothing further to do with CES and no access to information concerning the company. Plaintiff's Ex. B 23:12-24:1, ECF No. 48.

credibility is a question for the jury. For that reason, the Court cannot grant the Fund's motion for summary judgement with respect to its ERISA claim.[3]

## II. Michigan Uniform Fraudulent Transfer Act

Summary judgment is warranted, however, with respect to the Fund's claim under § 566.35(1) of the Michigan Uniform Fraudulent Transfer Act. Under that Act, a transfer made by a debtor is voidable as to a creditor if 1) the creditor's claim arose before the transfer was made, 2) the debtor made the transfer without receiving a reasonably equivalent value in exchange, and 3) the debtor was insolvent at the time of the transfer or as a result of the transfer. The UFTA further provides that a creditor may recover a judgment for the value of the asset transferred or the amount necessary to satisfy the creditor's claim, whichever is less, against the first transferee of the asset. MCL § 566.38(2).

It is undisputed that the Fund's claim against FCJ arose before FCJ transferred its real property to Total Waste Management. The UFTA broadly defines a "claim" as "a right to payment," regardless of whether the right is reduced to judgment and regardless of whether the amount has matured or is disputed. MCL § 566.31(c). It is undisputed that CES withdrew from the pension plan in June 2010, at which point the Fund had a "claim" against it. SOF at ¶ 16; *see also Cent. States, Se. & Sw. Areas Pension Fund v. TAS Inv. Co. LLC*, 11-CV-2991, 2013 WL 1222042, at *15 (N.D. Ill. Mar. 25, 2013) (recognizing that plaintiff had a claim against defendant on the date it withdrew from plan but denying summary judgment because the date of withdrawal was disputed). As discussed above, FCJ was jointly and severally liable for CES's withdrawal liability

---

[3] For the same reason, a reasonable jury could conclude that FCJ, in transferring the property, did not intend to "hinder, delay or defraud any creditor" for purposes of § 566.34(1)(a) of the Michigan Uniform Fraudulent Transfer Act, so summary judgment must be denied with respect to that claim as well.

at that time. It is also undisputed that the FCJ transferred its real property to Total Waste Management in August 2011, more than a year later.

Nor is there a genuine dispute with respect to the fact that FCJ did not receive reasonably equivalent value for the property transfer. Indeed, the property's assessed value for tax purposes in 2011 was $83,576.00, but FCJ received only $1.00 from Total Waste Management in exchange for the transfer.[4] SOF ¶¶ 30, 27. And finally, it is undisputed that FCJ was insolvent or became insolvent as a result of the transfer. *See id.* at ¶¶ 34, 35. For those reasons, no reasonable jury could find that FCJ did not violate § 566.35(1) of the Michigan UFTA, and summary judgment must be entered in the Fund's favor with respect to that claim.

Accordingly, judgment may be entered against Total Waste Management, as the first transferee of the asset, for the value of the asset at the time it was transferred. MCL § 566.38(2)(a). The Fund requests judgment in the amount of $167,152.00, arguing that the true value of the property in 2011 must have been *at least* double the amount of the tax assessment valuation (*i.e.*, at least $167,152.00). *See* Mich. Const. art. IX, § 3 (providing that "the assessed tax value of property shall not exceed 50% of the property's true cash value"). Because there is no evidence in the record to the contrary, the Court agrees.[5]

\*   \*   \*

---

[4] John L. Runco testified in his deposition that he informally paid John G. Runco for the transfer in the form of free legal services for his divorce and undocumented cash payments. Plaintiff's Ex. E at 54:3-5. But payments to John G. Runco in his personal capacity that did not benefit FCJ and that were not even "couched" in terms of repayment do not suggest in the slightest that FCJ received "equivalent value" for the transfer.

[5] True, John L. Runco testified in his deposition that he doubted the accuracy of the tax assessment valuation, noting that at the time of the transfer, the building was dilapidated. Plaintiff's Ex. E at 35:22. But it is undisputed that neither FCJ nor Total Waste Management attempted to ascertain the value of the property before the transfer. SOF ¶ 31. John L. Runco's completely unsupported lay opinion is insufficient to create a genuine dispute regarding the property value.

For the reasons discussed above, the Fund's motion for summary judgment is denied with respect to its ERISA claim and granted with respect to its state law claim. Judgment will be entered against Total Waste Management in the amount of $167,152.00. On the other hand, the Fund may be entitled to a larger recovery should it succeed against Total Waste Management on its ERISA claim at trial. A status hearing is set for April 10, 2019 for purposes of determining how this matter will proceed.

Dated: March 29, 2019

John J. Tharp, Jr.
United States District Judge